UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLAN WHITE,

   Plaintiff,         Case No. 1:08-cv-667

v.               HON. JANET T. NEFF

CYTEC INDUSTRIES, INC.,

   Defendant.

_____/

## OPINION

Plaintiff brought this case against his former employer, seeking damages under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, for the March 8, 2005 termination of his employment. Pending before the Court are the parties' cross-motions for summary judgment (Dkts 42 & 46). Having reviewed the parties' written submissions and accompanying exhibits, the Court finds that the relevant facts and arguments are adequately presented in these materials and that oral argument would not aid the decisional process. *See* W.D. Mich. LCivR 7.2(d). For the reasons discussed herein, the Court concludes that whether plaintiff is disabled within the meaning of the Act involves genuine issues of disputed material facts, precluding a grant of summary judgment in either party's favor. Therefore, the motions are denied.

### I. BACKGROUND

In 1981, plaintiff began working as a chemical production operator for defendant's predecessor, American Cyanamid, a chemical manufacturing facility (Compl. ¶ 8). He was

promoted in 1990 to supervise the chemical production operators (*id.* ¶¶ 10, 13). As a production supervisor, plaintiff had lower level management responsibilities overseeing all of the chemical departments during the shift (Pl. Dep. [Def. Reply Exh. 4] 33). Plaintiff continued working as a production supervisor when defendant Cytec purchased American Cyanamid in 1994 (Compl. ¶ 10).

On February 12, 2003, plaintiff underwent surgery for a lower back injury (Compl. ¶¶ 15-16). Defendant placed plaintiff on a long-term medical disability leave (*id.* ¶ 19), the maximum length for which was two years under defendant's policy. Plaintiff had more back surgeries in 2003 and 2004 (*id.* ¶¶ 16-17).

On January 3, 2005, plaintiff's physician, David A. Muzlakovich, M.D., released plaintiff to "return to full duty" work for "40 hours max/wk" (Def. Mot. Exh. 6). On January 24, 2005, Duong Truong, defendant's human resources manager, sent plaintiff the following letter:

> Dear Al,
>
> Per our recent phone conversation, RMS Disability was informed by your doctor of your restriction of no work over 40 hours per week. Due to this restriction, we will not be able to accommodate your return.
>
> This letter is to notify you that your continuous service credit with Cytec will end on February 14, 2005. At which point, your employment with Cytec Industries Inc. will terminate.

(Pl. Mot. Exh. 3.) Dr. Muzlakovich subsequently prepared a new release, dated January 28, 2005, which removed the maximum hourly restriction, and allegedly faxed it to defendant, although Truong testified that he never received it (Pl. Mot. Exh. 5; Truong Dep. 84-85).

Truong and Milo Fortier, defendant's safety coordinator, reviewed the functions of plaintiff's production supervisor position and completed a Medical Status Determination (MSD) form for Dr. Muzlakovich to use to evaluate whether plaintiff could perform the essential functions of his

position (Truong Dep. [Def. Mot. Exh. 2], 74; Def. Mot. Exhs. 7-8). The MSD indicated that lifting, pushing, pulling, stooping and repetitive twisting were requirements of plaintiff's specific job (Def. Mot. Exh. 7). Dr. Muzlakovich responded to the MSD form on February 3, 2005, indicating that the job responsibilities delineated in the MSD did "not seem to be consistent" with what plaintiff had described to him about the position (Def. Mot. Exh. 10). Dr. Muzlakovich related that plaintiff "describes his position as a supervisor as one of pure supervision and not required to do lifting, pushing, pulling, repetitive bending, twisting or stooping activities as a part of his normal job" (*id.*). The physician indicated that he gave plaintiff permission to return to work "within those parameters, understanding that he will continue to have some degree of lower back and perhaps leg pain with walking and climbing" (*id.*).

On March 8, 2005, defendant terminated plaintiff's employment (*id.* ¶¶ 3, 25). Truong sent plaintiff a letter providing the following:

> Dear Al,
>
> We have recently received a letter from your doctor, David A. Muzlakovich, dated on 02/03/05 describing his recommendations. According to this letter, he has given you permission to return to work only within the parameters of not having required to do lifting, pushing, pulling, repetitive bending, twisting or stooping as part of your normal job. As you are aware, part of the Production Supervisor job requirements include all of the above mentioned activities on a regular basis.
>
> This letter is to inform you that Cytec Industries Inc. cannot reasonably accommodate the recommendations described. Therefore, your continuous service credit and employment with Cytec has ended effective 02/14/05.

(Def. Mot. Exh. 11.)

Plaintiff subsequently filed a disability discrimination complaint with the Equal Employment Opportunity Commission, which issued a Right to Sue Letter on April 24, 2008 (Compl. ¶¶ 4-5). On July 14, 2008, plaintiff filed this action, alleging disability discrimination under the ADA.

3

Specifically, plaintiff has alleged that defendant terminated his employment because of his disability (¶ 30), because it "regarded or perceived" him as disabled (¶ 31), and/or because of his "history or record of having a disability" (¶ 32). Defendant filed an answer and affirmative defenses to plaintiff's complaint (Dkt 6).

On June 15, 2009, defendant filed a motion for summary judgment (Dkt 42). Defendant argues that plaintiff cannot establish a prima facie case under the ADA where plaintiff is not disabled and where defendant did not regard him as disabled. Defendant argues that even if plaintiff could establish a prima facie case, defendant articulated legitimate, non-discriminatory reasons for the discharge: (1) plaintiff could not return to work to perform the essential functions of his job; and (2) plaintiff had been on medical leave for more than two years, exceeding defendant's maximum medical leave time. Plaintiff filed a response to defendant's motion (Dkt 51), and defendant filed a reply (Dkt 52).

On June 17, 2009, plaintiff filed a cross-motion for summary judgment, arguing that the evidence is so one-sided in his favor that he is entitled to a judgment as a matter of law (Dkt 46). According to plaintiff, defendant terminated his employment not because he could not perform the essential functions of the production supervisor job, but because defendant "regarded" or "perceived" him as disabled and/or because of his record of disability. Defendant filed a response to plaintiff's motion (Dkt 50), and plaintiff filed a reply (Dkt 53).

On September 14, 2009, the judge to whom this matter was originally assigned, the Honorable Robert J. Jonker, recused himself, and this case was transferred to the undersigned pursuant to Administrative Order No. 09-076, filed September 16, 2009 (Dkts 59, 61).

## II. ANALYSIS

**A. Standards for Rendering Summary Judgment**

A party against whom relief is sought, such as defendant, may move, with or without supporting affidavits, for summary judgment on all or part of the claim. *See* FED. R. CIV. P. 56(b). Summary judgment is appropriately rendered "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000). "In other words, a party moving for summary judgment may satisfy its burden to show that there are no genuine issues of material fact simply 'by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.'" *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005) (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)).

Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," then the nonmovant has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the plaintiff "may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably

find for the plaintiff." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986). The court must consider "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one sided that one party must prevail as a matter of law." *Id.* at 251-52.

Plaintiff, the party claiming relief, may also move, with or without supporting affidavits, for summary judgment on all or part of the claim. *See* FED. R. CIV. P. 56(a). The Sixth Circuit Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002) (quoting 11 JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 56.13 (3d ed. 2000)). Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**B. Standards for Establishing ADA Claim**

The ADA prohibits discrimination by a covered entity "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff may establish a violation of the ADA by either direct or circumstantial evidence.

"If the plaintiff has direct evidence that the employer relied on his or her disability in making an adverse employment decision, or if the employer admits reliance on the handicap:

(1) The plaintiff bears the burden of establishing that he or she is 'disabled.'

6

(2) The plaintiff bears the burden of establishing that he or she is 'otherwise qualified' for the position despite his or her disability: (a) without accommodation from the employer; (b) with an alleged 'essential' job requirement eliminated; or (c) with a proposed reasonable accommodation.

(3) The employer will bear the burden of proving that a challenged job criterion is essential, and therefore a business necessity, or that a proposed accommodation will impose an undue hardship upon the employer."

*Monette v. Elec. Data Sys. Corp.,* 90 F.3d 1173, 1186 (6th Cir. 1996).

"If a plaintiff seeks to establish his or her case indirectly, without direct proof of discrimination, the plaintiff may establish a prima facie case of discrimination by showing that:

(1) he or she is disabled;

(2) otherwise qualified for the position, with or without reasonable accommodation;

(3) suffered an adverse employment decision;

(4) the employer knew or had reason to know of the plaintiff's disability; and

(5) the position remained open while the employer sought other applicants or the disabled individual was replaced."

*Monette,* 90 F.3d at 1179 (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973)), 1186. The defendant must then offer a legitimate explanation for its action. *Id.* If the defendant satisfies this burden of production, the plaintiff must introduce evidence showing that the proffered explanation is pretextual. *Id.* Under this scheme, the burden-shifting framework of *McDonnell Douglas,* the plaintiff retains the ultimate burden of persuasion at all times. *Id.* at 1186-87. "[W]hen an employer admits (or the evidence establishes) that its decision was based upon the employee's disability, direct evidence of discrimination exists..., [and] application of the *McDonnell Douglas* burden-shifting framework is inappropriate." *Id.* at 1180.

7

The Court's analysis in this case focuses on the first common element of both tests – whether plaintiff is disabled within the meaning of the ADA.

**C. Is Plaintiff Disabled?**

Under the ADA, a person is disabled if he has "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;" or "(B) a record of such impairment;" or "(C) does not have an impairment, but is regarded as having one." 42 U.S.C. § 12102(2). Plaintiff's complaint implicates all three prongs of the statutory definition (Compl. ¶¶ 30-32); however, in his motion for summary judgment, plaintiff indicates that he "is not claiming that he was disabled at the time of his termination" (Pl. Mot. 8). He references only record-of-disability and regarded-as-disabled claims (Pl. Mot. 9, 12). Defendant asserts that plaintiff has not pursued an actual-disability claim under § 12102(2)(A), either during his deposition testimony or in answering interrogatories (Def. Mot. 7-8). Consequently, the Court will likewise consider whether plaintiff is disabled only under the record-of-disability and regarded-as-disabled prongs, § 12102(2)(B) & (C).

**1.** *"Record of Disability"*

The record-of-disability prong of the ADA, § 12102(2)(B), protects "people who have recovered from previously disabling conditions (cancer or coronary disease, for example) but who remain vulnerable to the fears and stereotypes of their employers." *E.E.O.C. v. DaimlerChrysler Corp.,* 111 Fed. Appx. 394, 404, 2004 WL 2203586, *8 (6th Cir. 2004) (quoting *Davidson v. Midelfort Clinic, Ltd.,* 133 F.3d 499, 509 (7th Cir. 1998)). An individual has a "record of" disability if he "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Id.* (quoting 29 C.F.R. § 1630.2(k)). "This

part of the definition is satisfied if a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment. The impairment indicated in the record must be an impairment that would substantially limit one or more of the individual's major life activities. There are many types of records that could potentially contain this information, including but not limited to, education, medical, or employment records." *Id.* (quoting 29 C.F.R. Pt. 1630, App. § 1630.2(k)). *See also MX Group, Inc. v. City of Covington,* 293 F.3d 326, 339 (6th Cir. 2002) (citing 28 C.F.R. § 35.104(3)).

The regulations accompanying the ADA define physical impairment to mean "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine." 29 C.F.R. § 1630.2(h)(1).

The regulations define "substantially limits" to mean

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). "Major life activities," in turn, include "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i).

A plaintiff does not need to "demonstrate a present impairment that is substantial enough to qualify as disabling under the ADA." *Knight v. Metro. Gov't of Nashville & Davidson County,*

9

*Tenn.,* 136 Fed. Appx. 755, 760, 2005 WL 758239, *4 (6th Cir. 2005) (quoting *Davidson,* 133 F.3d at 509). The "plaintiff only needs to show that 'at some point in the past' he had such an impairment." *Id.* (quoting *Lloyd v. E. Cleveland City Sch. Dist.,* 232 F. Supp. 2d 806, 812 (N.D. Ohio 2002)).

Plaintiff blends the record-of-disability prong of the ADA, § 12102(2)(B), with the regarded-as-disabled prong, § 12102(2)(C), proffering the same evidence and argument to support both statutory definitions. Specifically, plaintiff relies on the following excerpt from Truong's deposition as "obvious, if unknowing, direct evidence of regarded as disabled (or record of disability) discrimination" (Pl. Mot. 12):

> Q. [Plaintiff's Counsel] Do you recall in the discussions with the group that was involved in the decision to terminate Mr. White anyone expressing concerns that if Mr. White were to return to work and do the job, that he could injure himself or reinjure himself?
>
> A. Yes, I think all of us were mindful of that.
>
> Q. Do you know if that was ever expressed?
>
> A. I don't remember.
>
> Q. Was that a concern that you had?
>
> A. Yes.
>
> Q. Why did you have that concern?
>
> A. Just because of the restrictions put forth by his doctor and some of the job requirements, job duties of our production supervisors. I mean that was a concern for me.

(Truong Dep. 40.) With regard to his record-of-disability claim, plaintiff argues that Truong's testimony demonstrates that defendant was aware of plaintiff's disability record and that defendant believed plaintiff posed an unacceptable risk of having an injury at work (Pl. Mot. 12).

Defendant acknowledges that plaintiff references a record-of-disability claim (Def. Resp. 3, 11), but defendant argues that plaintiff has not asserted any facts or provided any legal analysis in support of this claim (*id.* 11). According to defendant, there is "no evidence" that Truong decided to discharge plaintiff because of his prior back injuries (*id.* 10-11).

Plaintiff does not specifically address or discuss the records that indicate he had an impairment that substantially limited one or more of his major life activities; however, it is not disputed that plaintiff was attempting to return from a disability leave for his back condition at the time his employment was terminated. The fact that a plaintiff is classified as disabled for other purposes does not guarantee that the individual will satisfy the ADA definition of "disability," but the evidence of plaintiff's leave history is sufficient evidence from which a reasonable jury could conclude that he was previously limited in the major life activity of working and that he therefore had a record of being disabled. *See, e.g., Knight,* 136 Fed. Appx. at 760; *Lloyd,* 232 F. Supp. 2d at 813 (holding that, after "[g]ranting [the plaintiff] the benefit of reasonable inferences that can be drawn from these facts, [the plaintiff] has presented a factual dispute of whether he had a record of disability").

As for Truong's stated concern about plaintiff re-injuring himself, this evidence, while not direct evidence of disability within the meaning of ADA § 12102(2)(B), may similarly indicate to a reasonable jury that plaintiff's medical or employment records reflect the kind of impairment that could substantially limit him in the major life activity of working. In short, there is sufficient circumstantial evidence about whether plaintiff is disabled within the meaning of ADA § 12102(2)(B) to require submission of the issue to a jury, although the evidence is not so one sided that plaintiff must prevail as a matter of law.

## 2. *"Regarded as Disabled"*

The regarded-as-disabled prong of the ADA, § 12102(2)(C), "protects employees who are perfectly able to perform a job, but are rejected ... because of the myths, fears and stereotypes associated with disabilities." *Daugherty v. Sajar Plastics, Inc.,* 544 F.3d 696, 703-04 (6th Cir. 2008) (quoting *Gruener v. Ohio Cas. Ins. Co.,* 510 F.3d 661, 664 (6th Cir. 2008)).

Under the version of the ADA in effect when plaintiff filed suit,[1] there are two apparent ways in which individuals may fall within this third statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. *Ross v. Campbell Soup Co.,* 237 F.3d 701, 706 (6th Cir. 2001) (quoting *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999)). In either scenario, it is necessary that a covered entity entertain misperceptions about the individual – it must believe either that one has a substantially limiting impairment that one does not have, or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. *Id.* Hence, under the "regarded as" prong of the ADA, membership in the protected class becomes a question of intent. *Id.*

When the major life activity at issue in a regarded-as-disabled claim is "working," the statutory phrase "substantially limits" takes on special meaning and imposes a stringent standard, requiring proof that the employer regarded the employee as "significantly restricted in the ability

---

[1]Plaintiff filed his complaint before the ADA was amended to no longer require a plaintiff bringing a regarded-as-disabled claim to show an impairment limiting a life activity, and the Sixth Circuit Court of Appeals has held that the amendment does not apply retroactively. *Milholland v. Sumner County Bd. of Educ.,* 569 F.3d 562, 565-67 (6th Cir. 2009).

12

to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities." *Daugherty,* 544 F.3d at 704. An employer's perception that the plaintiff is unable to work in any relevant position at the defendant's place of business may constitute competent evidence of the employer's perception about the plaintiff's ability to perform the same broad class of work anywhere else. *Wysong v. Dow Chemical Co.,* 503 F.3d 441, 452-53 (6th Cir. 2007); *Moorer v. Baptist Mem'l Health Care Sys.,* 398 F.3d 469, 483-84 (6th Cir. 2005); *Henderson v. Ardco, Inc.,* 247 F.3d 645, 654 (6th Cir. 2001). But the inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working. *Swanson v. Univ. of Cincinnati,* 268 F.3d 307, 317 (6th Cir. 2001) (citing 29 C.F.R. § 1630.2(j)(3)(i)).

In short, "[p]roving that an employee is regarded as disabled in the major life activity of working takes a plaintiff to the farthest reaches of the ADA. It is a question embedded almost entirely in the employer's subjective state of mind. Thus, proving the case becomes extraordinarily difficult." *Ross,* 237 F.3d at 709. The case at bar presents no exception.

Again, plaintiff has not separately addressed the record-of-disability and regarded-as-disabled disability definitions but combines his analysis of both prongs, proffering the excerpt from Truong's deposition testimony previously quoted as "direct evidence" that defendant regarded him as disabled. According to plaintiff, the excerpt is direct evidence of Truong's "unlawful thought process" (Pl. Resp. 2). Plaintiff opines that defendant had insurance and liability fears about plaintiff continuing to work for it and that such fears are the evil that the ADA's regarded-as-disabled definition of disability was designed to prevent (*id.*). Plaintiff asserts that defendant's fears were subjective, "not based at all on a valid medical diagnosis or other objective evidence to support

13

it" (*id.* 13). According to plaintiff, the only medical diagnosis in this case came from Dr. Muzlakovich, whom plaintiff asserts supported his "full and unrestricted" return to work (*id.*).

According to defendant, Truong testified that when he drafted the letter to terminate plaintiff's employment, he made no independent evaluation of plaintiff's limitations and instead relied solely on the February 3, 2005 letter from Dr. Muzlakovich (Def. Mot. 8; Def. Reply 2; Truong Dep. 125-26). Defendant argues that Truong did not base his decision on a stereotyped misperception of plaintiff but on Dr. Muzlakovich's letter (Def. Resp. 5). *See Mahon,* 295 F.3d at 592 (indicating that an employer cannot be liable for relying on a treating doctor's restrictions); *Greuner,* 510 F.3d at 665 (same).

Plaintiff maintains that if defendant had actually relied on Dr. Muzlakovich's restrictions, it would have sent plaintiff back to work (Pl. Resp. 1-2; Pl. Mot. 13-31; Pl. Reply 1-2). Plaintiff opines that defendant misrepresented and mischaracterized Dr. Muzlakovich's statements about plaintiff's abilities and misrepresented the essential requirements of plaintiff's job (Pl. Resp. 1). Specifically, plaintiff asserts that Truong "used Dr. Mulakovich's [sic] letter as an excuse not to return Mr. White to work in part because he deliberately misstated what the essential requirements were of Mr. White's job, which he should have known did not involve lifting, pushing, pulling, repetitive sending, twisting or stooping as part of his normal job" (Pl. Reply 1-2). Plaintiff concludes that these "serial lies," combined with the "unrebutted evidence that [he] could perform the job," reveal that defendant regarded plaintiff as disabled and acted with a discriminatory intent in dismissing him (Pl. Resp. 1-2).

Defendant replies that plaintiff's argument that Truong misinterpreted or misperceived the extent of plaintiff's impairment and restrictions "misses the point" (Def. Reply 3). According to

14

defendant, "the central issue is Mr. Truong's subjective state of mind, not what the doctor intended to say" (*id.*). Moreover, defendant asserts that plaintiff points to no evidence to support the claim that defendant regarded him as being unable to work a broad class of jobs or substantially limited in any other major life activity (Def. Reply 5; Def. Mot. 10-12).

The parties' arguments illustrate that Truong's deposition testimony is not direct evidence that defendant regarded plaintiff as disabled within the meaning of ADA § 12102(2)(C). "Direct evidence is evidence that proves the existence of a fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004). The relevance of plaintiff's evidence is provided by inference. The record in this case, including Truong's stated concern about plaintiff reinjuring himself and written indication that "Cytec Industries Inc. cannot reasonably accommodate the recommendations described," does not compel (but may permit) a reasonable jury to infer that plaintiff belongs to the protected class of persons able to perform a class of jobs but rejected because of the myths, fears and stereotypes associated with disabilities.

Conversely, the restrictions Dr. Muzlakovich communicated in his February 3, 2005 letter, combined with defendant's proffered evidence that such abilities were essential for supervisors, could allow a reasonable jury to find that defendant was following the specific recommendations of plaintiff's treating physician. Dr. Muzlakovich attested in June 2009 that he "did not intend, by [his] letter of February 3, 2005, to indicate that Mr. White could not at all do lifting, pushing, pulling, bending, twisting or stooping at work" (Muzlakovich Aff. [Def. Resp. Exh. 3] ¶ 9). He did not believe his letter reasonably could be interpreted to mean that plaintiff could not do those activities at work (*id.*). However, his letter permits (but does not compel) this inference as his permission for plaintiff to return to work was "within those parameters."

In sum, whether defendant regarded plaintiff as disabled within the meaning of ADA § 12102(2)(C) is an issue properly left for the jury.  Having so concluded, it is not necessary to examine the parties' arguments on the remaining elements for establishing a disability discrimination claim under the ADA.

### III.  CONCLUSION

For the foregoing reasons, whether plaintiff is disabled within the meaning of ADA § 12102(2)(B) or (C) involves genuine issues of disputed material facts that should be resolved by a jury.  The Court therefore denies both plaintiff's motion for summary judgment (Dkt 46) and defendant's motion for summary judgment (Dkt 42).

An Order consistent with this Opinion will enter.


DATED: February 25, 2010　　　　　　　　/s/ Janet T. Neff
　　　　　　　　　　　　　　　　　　　　JANET T. NEFF
　　　　　　　　　　　　　　　　　　　　United States District Judge